# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAREK MATTHEWS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1530** |
| **TIDEWATER CREWING, LTD., ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by the Defendants Tidewater, Inc. and Tidewater Crewing, Ltd.[1]  Plaintiff Marek Mathews[2]  ("Plaintiff") has filed a response in opposition to the Motion.[3]  Defendants filed a reply memorandum in support of their Motion.[4]  After careful review of the parties' memoranda, the record, and the applicable law, the Court **GRANTS in part** and **DENIES in part** the Motion to Dismiss.  The Court grants the Motion insofar as it seeks to dismiss Plaintiff's claims on *forum non conveniens* grounds.  The Court denies the Motion insofar as it seeks to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

---

[1] R. Doc. 21.  Plaintiff's claims against Defendants Tidewater Marine International, Inc. and Tidewater Marine, LLC were previously dismissed without prejudice by the Court.  *See* R. Doc. 41.

[2] The claims of Plaintiffs Casilda Solomon Flores and Leslie Antoney Bodden Elwin were previously dismissed without prejudice by the Court.  *See* R. Doc. 56.  Plaintiff Mathews is the only remaining plaintiff in this action.

[3] R. Doc. 30.

[4] R. Doc. 38.  The Court has held two separate status conferences with the parties to discuss the present Motion.  *See* R. Doc. 66; R. Doc. 100.  At both conferences, the Court advised the parties that they may, as appropriate, seek leave to file additional supplemental briefing on the Motion.  As of the date of this Order, neither party has sought leave to file supplemental briefing.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Over the course of more than thirty years, from December 1982 until December 14, 2016, Plaintiff worked as both a seaman and as a captain for Defendants.[5] Although Plaintiff worked on vessels overseas, he became a lawful permanent resident alien in Miami, Florida in 2007.[6]  Plaintiff claims that he was hired by the Defendant, Tidewater Crewing, Ltd., from their New Orleans, Louisiana office in 1982.[7]  Plaintiff claims to have spent fourteen years as a captain aboard the "Tidewater Transport," an offshore supply vessel, and about one year on the "Tidewater ANG," also an offshore supply vessel.[8]  Plaintiff signed multiple Working Agreements ("Agreement") with Defendants throughout the years for each months-long shift that he worked for Defendants before taking leave.[9]  The Agreement calls for English law to apply to "[a]ny disputes arising out of or in connection with" the Agreement and also requires the High Court of Justice in London to be the exclusive forum for any dispute.[10]

During his time working for Defendants, Plaintiff alleges that he was exposed to toxic and hazardous chemicals, causing him to sustain kidney damage and prostate and bone cancer.[11]  Specifically, Plaintiff alleges that while working on vessels operated by Defendants in the Red Sea, he was exposed to chemical solvents,

---

[5] R. Doc. 17-5 at p. 12 ¶ 22.
[6] R. Doc. 30 at p. 3; R. Doc. 30-1 at ¶ 1 (Affidavit of Merek Mathews).
[7] R. Doc. 30-1 at ¶ 1; R. Doc. 17-5 at p. 12 ¶ 22.
[8] *Id.* at ¶¶ 5, 9.  Plaintiff also alleges that he served aboard other vessels including the "Sutton Tide" and "McKenney Tide."  *See* R. Doc. 17-5 at p. 12.
[9] *See* R. Doc. 21-4; R. Doc. 30-2.
[10] R. Doc. 21-4 at ¶ 18; R. Doc. 30-2 at ¶ 19.
[11] R. Doc. 17-5 at pp. 12–13 ¶¶ 14, 21, 25.

including benzene and xylene, "pumped from his vessels into wells and solvents used to clean the various parts of the vessel and its appurtenances."[12] Plaintiff claims that he "inhaled strong smells from the emulsifier [fluid] and other mixed chemicals," for eight to twelve hours a day for ninety days at a time.[13] According to Plaintiff, he took several physical examinations over the years in Houma, Louisiana.[14] Plaintiff states that he called his boss located in New Orleans whenever he had a "major problem" and needed assistance.[15]

Plaintiff originally filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana on February 19, 2021 asserting claims under the Jones Act as well as under general maritime law, pursuant to the savings to suitors clause, 28 U.S.C. § 1333.[16] Plaintiff filed an Amended and Supplemental Petition for Damages in state court on June 28, 2021.[17] On August 12, 2021, Defendants filed a Notice of Removal, removing the case to this Court.[18] Shortly thereafter, Plaintiff filed a Motion to Sever and Remand, arguing that because he is a Jones Act seaman, Defendants are statutorily barred from removing this action.[19] Plaintiff moved to withdraw his Motion to Remand on September 16, 2022,[20] which this Court granted.[21]

---

[12] *Id.* at p. 13 ¶ 24; R. Doc. 30-1 at ¶ 14.
[13] R. Doc. 30-1 at ¶ 12.
[14] *Id.* at ¶¶ 3, 19; R. Doc. 17-5 at p. 13 ¶ 28.
[15] R. Doc. 30-1 at ¶ 16.
[16] *See* R. Doc. 17-5 at p. 2.
[17] *Id.* at p. 10.
[18] R. Doc. 1.  Defendants filed an Amended Notice of Removal on September 30, 2021 pursuant to an Order of this Court, properly alleging the citizenship of the parties.  R. Doc. 17.
[19] R. Doc. 11.
[20] R. Doc. 81.
[21] R. Doc. 84.

Defendant filed the present Motion to Dismiss on October 18, 2021, arguing that Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief may be granted and, alternatively, under Fed. R. Civ. P. 12(b)(3) on the grounds of *forum non conveniens*.[22]  As for Defendant's Rule 12(b)(6) argument, Defendant contends that Plaintiff is statutorily barred from bringing a Jones Act claim or any other maritime claim under United States law because Plaintiff was not a citizen or permanent resident alien of the United States at the time of the accident in question, the accident occurred outside the territorial waters of the United States, and because Plaintiff was injured during the scope of his employment working on vessels servicing oil wells in the Red Sea.[23]  Defendants also argue that Plaintiff fails to state a valid claim for relief under the Jones Act and general maritime law of the United States because the *Lauritzen-Rhoditis* factors favor the application of Egyptian law to Plaintiff's claims.[24]

Alternatively, Defendants argue that this action should be dismissed pursuant to the doctrine of *forum non conveniens* in favor of a forum in either Egypt or England.[25]  Defendants contend that the scant connections this case has to the United States as well as the existence of a valid and enforceable forum-selection clause in Plaintiff's employment contract requiring disputes to be heard in London all support

---

[22] R. Doc. 21.
[23] *See* R. Doc. 21-1 at pp. 3–5.
[24] *See id.* at pp. 5–10.
[25] *See id.* at pp. 10, 17.

dismissal on *forum non conveniens* grounds.[26]  According to Defendants, neither the relevant public- nor private-interest factors support this Court retaining this case.[27]

Plaintiff briefly responded to Defendants' Motion, arguing that Defendants had waived their right to bring this Motion to dismiss because Defendants already filed an answer in state court prior to removal.[28]  As to the merits of Defendants' Motion, Plaintiff argues that Defendants rely on matters outside of the pleadings and attempt to bring a motion for summary judgement "under the guise of a Rule 12(b)(6) motion to dismiss."[29]  Plaintiff contends that the Court cannot conduct an analysis of the *Lauritzen-Rhoditis* factors to determine whether Plaintiff has stated a plausible claim for relief at this stage due to the factually intensive nature of such analysis.[30]  Nevertheless, Plaintiff responds to some of the factual allegations made by Defendants and provides his own account of the facts, both in his briefing and in an attached affidavit.[31]  Plaintiff does not address Defendants' *forum non conveniens* arguments other than to argue that any *forum non conveniens* analysis must wait for a determination by the Court of which law applies to this dispute.[32]

Defendants filed a reply in support of their Motion, pointing out that Plaintiff did not "controvert or respond to" Defendants' argument that this case should be dismissed on *forum non conveniens* grounds pursuant to the valid forum-selection

---

[26] *See id.* at pp. 10–18.
[27] *See id.* at pp. 11–17.
[28] *See* R. Doc. 30 at pp. 1–2.
[29] *Id.* at p. 2.
[30] *See id.* at pp. 3–4.
[31] *See id.*
[32] *See id.* at p. 5.

clause in Plaintiff's employment contract.[33]   Defendants maintain that this action should be dismissed in favor of the High Court of Justice in London pursuant to the forum selection clause in Plaintiff's employment contract.[34]   Defendants also dispute Plaintiff's argument that they have waived their right to file the instant Motion and that a motion for summary judgment is the proper procedural vehicle to conduct a choice of law analysis using the *Lauritzen-Rhoditis* factors.[35]

## II.   ANALYSIS

### A. Subject-Matter Jurisdiction

Although neither party addresses whether this Court may exercise jurisdiction over this case, the Court maintains an unflagging obligation to ensure that it has jurisdiction over an action as federal courts are courts of limited jurisdiction.[36] However, the Court notes that a district court is not required to determine its own subject-matter jurisdiction over an action if it determines that a case should be dismissed on *forum non conveniens* grounds.[37]   Although the Court does find that this action ought to be dismissed pursuant to the doctrine of *forum non conveniens*, the Court briefly explains why it has jurisdiction in this procedurally unique action.

---

[33] R. Doc. 38 at pp. 1–2.

[34] *See id.*

[35] *See id.* at pp. 3–5.

[36] *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (citations omitted).

[37] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").

As a general matter, Jones Act claims brought initially in state court are statutorily barred from being removed to federal courts by 28 U.S.C. § 1445(a).[38] However, § 1445(a)'s bar to removal is non-jurisdictional and may be waived by a plaintiff's failure to object to such removal.[39] When an action is improperly removed, "the issue in subsequent proceedings is not whether the case was properly removed, but whether the federal district court would have had jurisdiction of the case had it been filed in that court."[40]

In the present matter, Plaintiff filed a Motion to Remand this action on the ground that his Jones Act claim is made nonremovable by statute.[41] Plaintiff then moved to withdraw his remand motion, effectively waiving the procedural defect of removal of his Jones Act claims.[42] Because Plaintiff's Jones Act claim—brought at law in state court pursuant to the saving-to-suitors clause—arises under the laws of the United States[43] within the meaning of 28 U.S.C. § 1331, and because § 1445(a) is a non-jurisdictional—and, therefore, waivable—bar against removal, the Court finds that it has federal question jurisdiction over Plaintiff's Jones Act claim.

---

[38] *See Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) ("It is axiomatic that Jones Act suits may not be removed from state court.").

[39] *See Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 117 (5th Cir. 1987) (en banc).

[40] *Id.* (quoting *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702 (1972)).

[41] R. Doc. 11.

[42] R. Doc. 81. The Court subsequently granted Plaintiff's motion to withdraw his motion to remand. R. Doc. 84.

[43] A seaman plaintiff may choose to bring an *in rem* Jones Act claim in a federal court or an *in personam* claim in either federal or state court. The federal judiciary has exclusive admiralty jurisdiction over the former *in rem* claim under 28 U.S.C. § 1333 while both state and federal courts have concurrent jurisdiction over *in personam* claims brought at law. Plaintiff has chosen to bring an *in personam* Jones Act claim at law in Louisiana state court. That claim does not invoke the exclusive admiralty jurisdiction of the federal courts and is properly considered as arising under the laws of the United States, namely the Jones Act. Indeed, Plaintiff could have initially brought an *in personam* Jones Act claim at law in federal court without invoking the Court's admiralty jurisdiction and relying solely on § 1331 federal question jurisdiction.

As for Plaintiff's general maritime claims, the Court notes that such claims may not be removed to a federal district court absent an independent basis for jurisdiction, such as diversity.[44]  Although diversity of citizenship is not established here because there are alien parties present on both sides of this case,[45] the Court nevertheless finds that it may exercise jurisdiction over Plaintiff's general maritime claims as part of the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[46]  Here, Plaintiff's maritime claims are so related to his Jones Act claims—which are within the Court's original federal question jurisdiction—that they collectively form the "same case or controversy."[47]  Plaintiff's claims all stem from his alleged exposure to hazardous substances aboard vessels owned or operated by the Defendants, his employers.  Further, Plaintiff's claims all pertain to the same alleged injury, the same Defendants, the same time frame, and concern the same underlying set of facts.  The Court finds this nexus sufficient to exercise § 1367 supplemental jurisdiction over Plaintiff's general maritime claims.

---

[44] *See, e.g.*, *Freeman v. Phillips 66 Co.*, No. CIV.A. 14-311, 2014 WL 1379786, at *3–4 (E.D. La. Apr. 8, 2014) (Engelhardt, J.); *Pelagidis v. Future Care, Inc.*, No. CV H-17-3798, 2018 WL 2221838, at *7–8 (S.D. Tex. May 15, 2018) (collecting cases).

[45] Both Plaintiff and the Defendant, Tidewater Crewing, Ltd. are alien parties.  Plaintiff is a citizen of Honduras and Tidewater Crewing, Ltd. is a citizen of the Cayman Islands.  *See* R. Doc. 17 at p. 2. Plaintiff's lawful permanent resident status does not make him a "citizen" of a state within the meaning of 28 U.S.C. § 1332.  *See, e.g.*, *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020).

[46] 28 U.S.C. § 1367(a).

[47] *Id.*

**B. Motion to Dismiss**

**i.    Defendants Have Not Waived Their Right to File Motions to Dismiss.**

The Court first addresses a threshold issue raised by Plaintiff.  Plaintiff argues that Defendants' Rule 12(b) Motion should be denied or stricken because Defendants filed the instant Motion after they had previously filed an answer in state court prior to removal of this action, in contravention of Rule 12(b).[48]  Plaintiff is correct that Rule 12(b) requires a party to assert any of the enumerated Rule 12(b) defenses by motion "before pleading if a responsive pleading is required."[49]  An answer to a complaint is considered a "pleading" under Fed. R. Civ. P. 7(a).[50]  However, Fed. R. Civ. P. 81(c)(1) makes clear that the Federal Rules of Civil Procedure only "apply to a civil action *after* it is removed from a state court."[51]  Were Defendants to have filed an answer after this matter was removed to this Court, then Plaintiff's argument might have merit.  The record reflects that Defendants filed their answer while this case was still in Louisiana state court and, thus, before the Federal Rules of Civil Procedure applied to the case.  Accordingly, the Court does not find that Rule 12(b) bars Defendants from filing the instant Motion or that Defendants have waived their right to file such Motion.[52]  Moreover, in their state court answer, Defendants raised the same defenses which they currently raise in the instant Motion: that the case

---

[48] *See* R. Doc. 30 at pp. 1–2.
[49] *See* Fed. R. Civ. P. 12(b).
[50] *See* Fed. R. Civ. P. 7(a)(2).
[51] Fed. R. Civ. P. 81(c)(1).
[52] *See Hunt v. BAC Home Loans Servicing, LP*, No. CIV.A. C-11-261, 2012 WL 219330, at *11 (S.D. Tex. Jan. 24, 2012) (explaining that a defendant does not waive a Rule 12(b) motion in a removed case if the defendant previously answered while the case was in state court).

should be dismissed on *forum non conveniens* grounds pursuant to the forum-selection clause in Plaintiff's employment contract, that Plaintiff is statutorily barred from pursuing his claims under 46 U.S.C. § 30105, and that Plaintiff is not a Jones Act seaman.[53] Defendants have not waived any right to bring the present Motion and Plaintiff cannot claim any surprise or prejudice by Defendants' claims.

### ii.   *Forum non conveniens*

Defendants contend that this action should be dismissed pursuant to the doctrine of *forum non conveniens* because the proper forum for this matter is either in Egypt, due to the nexus between Egypt and the facts of this case, or in England, pursuant to the forum-selection clause contained in Plaintiff's employment contract.[54] Because the Court finds the forum-selection clause to be valid and enforceable and the *forum non conveniens* public-interest factors to weigh in favor of dismissal, the Court grants Defendants' Motion to Dismiss on *forum non conveniens* grounds. Because this Court finds that dismissal on *forum non conveniens* grounds is appropriate in this case, the Court does not separately consider Defendants' Rule 12(b)(6) arguments.

---

[53] *See* R. Doc. 17-5 at pp. 23–24, 31–32.
[54] *See* R. Doc. 21-1 at pp. 10, 17. Defendants point to Rule 12(b)(3) as the basis for their motion to dismiss for *forum non conveniens*. *See id.* at p. 1. However, *forum non conveniens* is distinct and separate from a Rule 12(b)(3) motion to dismiss for improper venue. Whether a venue is "improper" has only to do with whether a forum satisfies federal venue laws. *Forum non conveniens* is a discretionary doctrine which concerns the propriety of a forum in light of a forum-selection clause or other factors making a foreign venue more appropriate. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Accordingly, the Court construes Defendants' Motion as moving to dismiss pursuant to the doctrine of *forum non conveniens* rather than pursuant to Rule 12(b)(3).

### a. Legal Standard

A dismissal on *forum non conveniens* grounds "'den[ies] audience to a case on the merits,' it is a determination that the merits should be adjudicated elsewhere."[55] "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'"[56] Moreover, "[t]he common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad[.]'"[57] In deciding a motion to dismiss on *forum non conveniens* grounds, a court may consider all of the evidence before it and is not limited to the allegations in the complaint.[58]

The Supreme Court has explained that the proper procedural vehicle for enforcing a foreign forum-selection clause is through the doctrine of *forum non conveniens*.[59] Maritime forum-selection clauses are presumptively reasonable and enforceable.[60] As the Fifth Circuit has explained, forum selection clauses in employment contracts for seamen reduce a "vessel owner's exposure to suits in forums all over the world . . . [and] inform[] the seamen of where their causes of action can

---

[55] *Sinochem*, 549 U.S. at 432 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) then citing *American Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994)).

[56] *Id.* at 429 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)).

[57] *Id.* at 430 (quoting *American Dredging*, 510 U.S. at 449 n.2).

[58] *See Johnson v. PPI Tech. Servs., L.P.*, No. CIV.A. 11-2773, 2012 WL 1865713, at *2 (E.D. La. May 22, 2012) (Vance, J.); *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158–59 (2d Cir. 1980) (en banc) ("[I]t is the well established practice . . . to decide [*forum non conveniens*] motions on affidavits.").

[59] *See Atl. Marine*, 571 U.S. at 60.

[60] *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972)).

be maintained."[61]  These factors alone may be sufficient for a court to determine that the forum-selection clause is reasonable.

To overcome the presumption of enforceability, the party challenging the clause must make a "'strong showing' that the clause is unreasonable."[62] "This type of clause is 'subject to judicial scrutiny for fundamental fairness.'"[63] Unreasonableness exists  where "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."[64]  That a party lacked bargaining power or that the contract at issue was an adhesion contract does not necessarily make the forum selection clause unreasonable.[65]

In a traditional *forum non conveniens* analysis a district court first determines whether a foreign forum is both "available" and "adequate"[66] and, if so, then balances

---

[61] *Id.* at 221.
[62] *Id.* at 220.
[63] *Id.*
[64] *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997).
[65] *See id.* at 965.
[66] *See Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016).

a variety of public[67] and private[68] interest factors, and "decide[s] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"[69]   However, in the presence of a valid and enforceable forum-selection clause, a court performs a modified *forum non conveniens* analysis which changes the analysis in two ways.[70]   First, under this modified approach, a court gives no weight to a plaintiff's choice of forum.[71]   Because the parties have already contractually agreed upon a given forum, a court need not determine the availability and adequacy of that chosen forum; presumably the parties themselves have already determined that the chosen forum is both adequate and available.[72]   The second modification to the *forum non conveniens* analysis is that

---

[67] The public interest factors include:

> (1) [A]dministrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 309 (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016)).
[68] The private interest factors include:

> (1) [R]elative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Weber*, 811 F.3d at 766–67.
[69] *Atl. Marine*, 571 U.S. at 63.
[70] *See id.* at 63–64; *Barnett*, 831 F.3d at 300 ("The presence of a valid forum-selection clause simplifies this analysis in two ways.").
[71] *See Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 63).
[72] The forum is "available" because both parties have agreed to subject themselves to the jurisdiction of the contractually-agreed-to forum.   The forum is "adequate" because a court may assume that parties would not voluntarily agree to litigate in an inadequate forum.

a court does not consider any of the private interest factors.[73]  "A court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum."[74] Finally, in determining whether the public interest factors point toward dismissing a case on *forum non conveniens* grounds, a court must be cognizant that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[75]  The plaintiff bears a "high burden of persuasion" in demonstrating why a court should not transfer a case to the contractually selected forum. [76]

### b.  The Court need not first determine choice of law.

Plaintiff addresses Defendants' *forum non conveniens* argument only in passing, stating that "Defendants have fundamentally conflated choice of law and *forum non conveniens*[,]" and that "since [the Defendants] cannot establish without a factual determination the law the court should apply, they cannot be heard to discuss the convenience of the forum."[77]  Plaintiff does not otherwise contest the validity of the forum selection clause in his employment contract with Defendants.

Plaintiff's suggestion that the Court must first resolve choice of law issues under the *Lauritzen-Rhoditis* factors before considering any *forum non conveniens* argument is contrary to current Fifth Circuit precedent.  Prior to 1987, the order of operations called for by Plaintiff was the prevailing law in this Circuit: a district court

---

[73] *See Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

[74] *Id.*

[75] *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)) (alteration in original).

[76] *Barnett*, 831 F.3d at 309 (quoting *Weber*, 811 F.3d at 776).

[77] R. Doc. 30 at p. 5.

first determined whether United States law applied to a conflict and then, if the court found that foreign law applied to the action, proceeded to conduct a *forum non conveniens* analysis.[78]   However, in *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, the en banc Fifth Circuit reversed its prior precedents and held that this modified *forum non conveniens* analysis was inconsistent with the Supreme Court's opinion in *Piper Aircraft Co. v. Reyno*.[79]   As the Circuit explained, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."[80]   In other words, choice of law does not dictate whether an action should be dismissed on *forum non conveniens* grounds. Thus, district courts need not conduct a choice of law determination prior to consideration of a motion to dismiss on *forum non conveniens* grounds.

### c.  The forum-selection clause calling for this dispute to be litigated in London is valid and enforceable.

Because Defendants have moved to dismiss this case pursuant to a contractual forum selection clause, this Court must first ensure that the forum selection clause is valid and enforceable before considering whether dismissal is warranted in this case.  The Court begins with the language of Plaintiff's employment contract.  The Working Agreement entered into between Defendant Tidewater Crewing, Ltd. and Plaintiff on September 21, 2016 specifies that:

---

[78] *See, e.g.*, *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1017–18 (5th Cir. 1981) ("[P]rior to dismissing a case for forum non conveniens, a district court should ascertain if American or foreign law is applicable.  If American law is applicable, then the American court should retain jurisdiction.").
[79] 821 F.2d 1147, 1163 n.25 (5th Cir. 1987) (en banc).
[80] *Id.* (quoting *Sherrill v. Brinkerhoff Maritime Drilling*, 615 F. Supp. 1021, 1035 (N.D. Cal. 1985).

> Any disputes arising out of or in connection with this
> Agreement including, but not limited to, claims involving
> personal injury or death, shall be determined in accordance
> with English law (but excluding English law of conflicts
> which would apply the law of another jurisdiction) and
> shall be referred to the High Court of Justice in London
> which shall be the exclusive jurisdiction of any such
> dispute.  Both parties hereby confirm such choice of law
> and venue and agree to submit to the jurisdiction of the
> English Courts.[81]

The Court first notes that the language of the contract is mandatory rather than permissive.  A mandatory forum-selection clause "affirmatively requires that litigation arising from the contract be carried out in a given forum," while a permissive forum-selection clause "is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum."[82] "Only mandatory clauses justify transfer or dismissal."[83]   Here, the forum-selection clause states that "[a]ny disputes . . . shall be referred to the high Court of Justice in London" and that the parties "confirm such choice of . . . venue."[84]  This language is plainly mandatory as it affirmatively requires that all disputes be litigated in London.  Thus, the mandatory nature of the forum-selection clause justifies dismissal for *forum non conveniens* assuming that the clause is otherwise valid and enforceable.

Although Plaintiff's cause of action sounds in tort rather than in contract, that alone does not bring Plaintiff outside the ambit of the language of the contract.  Indeed, the contractual language states that "any dispute[] arising out of or in

---

[81] R. Doc. 21-4 at ¶ 18.  The Court notes that the copy of the Agreement provided by Defendant is barely legible and that the Court has relied upon the copy of the Agreement provided by Plaintiff to ascertain some of language.
[82] *Weber*, 811 F.3d at 768.
[83] *Id.*
[84] R. Doc. 21-4 at ¶ 18.

connection with" the agreement including "claims involving personal injury or death" shall be covered by the forum-selection clause.[85]  The language is all encompassing—"*any* dispute"—and leaves little ambiguity as to the intention of the parties.  For claims sounding in both tort and contract, Plaintiff is contractually obligated to bring such claims in English courts.  The Agreement does not distinguish between tort causes of action and contractual causes of action.  Moreover, the Fifth Circuit has upheld the enforcement of forum selection clauses in employment contracts where the language of the contract makes clear that tort causes of action are subject to the forum selection clause.[86]  The Court sees no reason why Plaintiff's claims here are not covered by the forum-selection clause.

The Court next considers whether the Agreement covers the injuries complained of by Plaintiff.  That Plaintiff's exposure injury occurred over many years and across several different employment contracts does not affect the Court's analysis here.  Per the terms of Plaintiff's final Agreement, the Agreement superseded "all prior Working agreements signed by both parties."[87]  That Agreement mandates that all disputed be heard in English courts.  Further, Plaintiff alleges that his injury occurred at all times he was employed by Defendants, up to and including the term of work specified in the Agreement.[88]  Moreover, Plaintiff has provided a copy of a separate agreement entered into between he and Defendant Tidewater Crewing, Ltd.

---

[85] *Id.*

[86] *See Marinechance Shipping*, 142 F.3d at 222–23 ("'[A]ny and all disputes or controversies arising out of or by virtue of this Contract' includes tort causes of action arising during the course of employment between the seamen and [Defendant].").

[87] R. Doc. 21-4 at p. 1.

[88] *See* R. Doc. 17-5 at p. 12.

from January of 2009 containing identical language.[89]  Thus, it would appear that as a matter of course the employment contracts entered into by the parties contained a forum-selection clause giving English courts exclusive jurisdiction over any disputes.

Plaintiff has not provided any argument as to why the forum selection clause in his employment contract is unreasonable or fundamentally unfair.  There is no evidence, nor any argument, that the forum-selection clause was the product of fraud or coercion.  Plaintiff's potential relative lack of bargaining power does not compel a finding of unreasonableness.  Second, Plaintiff will not be deprived of his opportunity to have his day in court as the courts of England are more than sufficient to protect Plaintiff's rights.  The Fifth Circuit has recognized that "England [is] a forum that American courts repeatedly have recognized to be fair and impartial."[90]  Moreover, the Fifth Circuit has upheld forum-selection clauses mandating a forum other than where a plaintiff resides, stating that "with modern conveniences of electronic filing and videoconferencing," it is often unnecessary for a plaintiff to physically be present in the other jurisdiction.[91]  Finally, enforcement of forum selection clauses in maritime contracts does not contravene any public policy of the United States.[92]  In fact, the opposite is the case.  Given the mix of nationalities involved in the facts of this case—an American lawful permanent resident operating in Egyptian waters for companies that are based in the United States and in the Cayman Islands—it is eminently reasonable that Plaintiff's employment contract would contain a forum

---

[89] *See* R. Doc. 30-2.
[90] *Haynsworth*, 121 F.3d at 967 (citations omitted).
[91] *Calix-Chacon v. Glob. Int'l Marine, Inc.*, 493 F.3d 507, 515 (5th Cir. 2007).
[92] *See Bremen*, 407 U.S. at 12–18.

selection clause to provide clarity to all parties as to where any disputes are to be litigated.[93]   Further, forum selection and choice-of-law clauses do not constitute an unlawful waiver of a seaman's statutory rights.[94]   Accordingly, the Court finds that the forum-selection clause in Plaintiff's employment contract is valid and enforceable.

### d.  The public-interest factors weigh in favor of dismissal.

The Court next considers the *forum non conveniens* public interest factors, keeping in mind that "[t]hese factors justify a refusal to enforce a forum-selection clause only in 'truly exceptional cases.'"[95]   Plaintiff has not addressed any of the factors.  For that reason alone, Plaintiff has not met his high burden of demonstrating that the forum-selection clause should not be enforced.   Nevertheless, the Court briefly considers the factors and Defendants' arguments thereto and explains why the public-interest factors support dismissing this action.[96]

### 1.  Administrative difficulties for the court flowing from docket congestion

Defendants argue that litigating this matter in this Court will result in a number of complexities and disputes regarding production of documents from foreign sources, "administrative problems related to delays in presenting evidence[,] and

---

[93] *See id.* at 17 ("We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. This case . . . involves a freely negotiated international commercial transaction between a German and an American corporation for towage of a vessel from the Gulf of Mexico to the Adriatic Sea.").

[94] *See Skoglund v. PetroSaudi Oil Servs. (Venezuela) Ltd.*, No. CV 18-386, 2018 WL 6112946, at *8 (E.D. La. Nov. 20, 2018) (Lemelle, J.) (citing *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1021 (5th Cir. 2015)).

[95] *Barnett*, 831 F.3d at 309 (quoting *Weber*, 811 F.3d at 776).

[96] *See In re Air Crash*, 821 F.3d at 1166 ("[A] district court should set out its findings and conclusions supporting the granting or denying of a motion to dismiss for forum non conveniens.  The district court's findings and conclusions should be set out in writing or clearly stated on the record.").

issues coordinating the presence of foreign witnesses."[97]  In short, Defendants argue that dismissing this action will save the Court a considerable amount of work and avoid causing unnecessary congestion.  Although the Court understands the potential administrative difficulties that may arise if this matter is kept in this Court, the Court does not find that that its docket is so congested as to necessitate dismissal of this matter nor does the Court find that this particular matter would overburden the Court.  Accordingly, the Court finds that this factor does not weigh in favor of dismissal.

### 2.  Local interest in having localized controversies decided at home

Defendants contend that the United States has no local interest in this matter as the dispute concerns foreign litigants regarding events that occurred in foreign waters.[98]  Although the Court does not agree that neither the United States nor Louisiana has *any* interest in this case, the Court concurs that these local interests are outweighed by non-local interests.  The ties to Louisiana, while not non-existent, are slim.  Plaintiff alleges that he received medical treatment on certain occasions in Houma, Louisiana and that Defendants managed the vessels that he worked on from their New Orleans office.[99]  Defendants counter that most of Plaintiff's health evaluations took place in Honduras, not in the United States, and that the vessels were managed locally in Egypt.[100]  Even accepting Plaintiff's assertions as true, those Louisiana connections are insufficient here.  Plaintiff is a permanent resident alien

---

[97] R. Doc. 21-1 at pp. 15–16.
[98] See R. Doc. 21-1 at pp. 16–17.
[99] *See* R. Doc. 30 at p. 4.
[100] *See* R. Doc. 38 at p. 6; R. Doc. 21-1 at p. 8.

living in Miami, Florida and worked for Defendants in the Red Sea in Egyptian waters, the locus of Plaintiff's exposure injuries. Neither of the Defendants are Louisiana corporations. Accordingly, the Court finds that there is little local interest in having this case decided in Louisiana.

### 3. Interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action

This is not a diversity case. Accordingly, this factor is inapplicable.

### 4. Avoidance of unnecessary problems in conflict of laws or in the application of foreign law

Although the Court refrains from determining which law applies to this matter, the Court notes that if it were to keep this case and enforce the choice of law provision contained in Plaintiff's employment contract, the Court would be faced with interpreting and applying English law. However, dismissing this action in favor of English courts avoids issues of a forum applying foreign law. The Court finds that this factor weighs in favor of dismissal.

### 5. Unfairness of burdening citizens in an unrelated forum with jury duty

Defendants have provided no argument regarding this factor. Because the non-local interests in this action predominate over the local interests, the Court finds this factor to weigh slightly in favor of dismissal.

### 6. Weighing the factors

In sum, the Court finds that, on balance, the public-interest factors lean toward

dismissal of this action on *forum non conveniens* grounds.  Plaintiff has failed to demonstrate to the Court that the public-interest factors weigh in favor of keeping this case in this Court.

### e.  Dismissal for *forum non conveniens* is warranted

Because the Court has found the forum-selection clause in Plaintiff's employment contract mandating that this dispute be heard in the High Court of Justice in London, England to be enforceable, and because the forum non conveniens public-interest factors support dismissal of this action, the Court finds its proper to dismiss the case on *forum non conveniens* grounds.

## III.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss[101] is **GRANTED in part** and **DENIED in part.**  The Court **GRANTS** Defendants' Motion insofar as it seeks dismissal of Plaintiff's claims on *forum non conveniens* grounds.  The Court **DENIES** the Motion as it pertains to dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's claims against the Defendants are **DISMISSED without prejudice** provided that:

(1) Defendants submit to service of process and jurisdiction in the appropriate English forum;

---

[101] R. Doc. 11.

(2) Plaintiffs initiate appropriate proceedings within 120 days of this Order and Reasons;

(3) Defendants formally waive any statute of limitations defense that has matured since the commencement of this case; and

(4) Defendants agree to satisfy any final judgement rendered by the English forum.

New Orleans, Louisiana, February 28, 2023.

**WENDY B. VITTER**
**United States District Judge**